43507. ATLANTA AMERICANA MOTOR HOTEL CORPORATION v. SIKA CHEMICAL CORPORATION.

708

Argued March 6, 1968—Decided April 10, 1968—
Rehearing denied April 29, 1968—Cert. 

*Arnall, Golden & Gregory, H. Fred Gober,* for appellant.

*Huie & Harland, Harry L. Cashin, Jr., Terrill A. Parker,* for appellee.

Jordan, Presiding Judge. ■ In the first enumeration Americana complains of the refusal to admit in evidence a letter purportedly written by a representative of Guaranteed to a representative of Sika, dated June 4, 1963, containing a narration of past events and statements made by various persons with respect to the problem and how to resolve it. The letter is replete with hearsay and self-serving declarations which the writer uses as a basis to blame Sika and exonerate Guaranteed, and to in-

duce Sika to take action. Much of the content would have been inadmissible and subject to objection if offered in testimony by the writer as a witness, and the fact that it was offered as a written narration sent to a representative of the defendant does not elevate it to the status of admissible evidence. The trial judge properly excluded this letter from the evidence.

■ In the second enumeration Americana complains of the refusal to admit in evidence a letter dated October 19, 1962, purportedly from a representative of Sika to Guaranteed stating that the coating, when mixed with certain sand, had nearly the same coefficient of expansion as concrete, but somewhat greater, and suggesting that due to the brittle nature of the product flaking could occur under conditions of changing temperature. The writer informed Guaranteed that Sika recommended another product of greater elasticity for use in coating defective areas where flaking had occurred, which Sika had in production and was shipping to arrive in Atlanta during the week of October 29, 1962. Although it was brought out in the trial that Sika furnished this product to Guaranteed free of charge, there is nothing in the letter, even if the statements therein were made by authority of Sika, which constitutes an admission by Sika of the breach of any implied warranty in the product originally supplied. In essence, the letter merely shows an effort on the part of Sika to assist Guaranteed in correcting any deficiency in the original application, whatever the cause, by suggesting the use of another product, and a speculative opinion, not shown to be that of an expert, as to the possible cause of the failure of the original coating to adhere to the concrete in some places, an event which had long since taken place. It in no way discloses that the product originally furnished was defective and not precisely what it purported to be, Sika Surface Kote, having certain known characteristics, as manufactured and marketed for certain uses by Sika, or that it was not the product which Americana had specified for use in its prime contract. Accordingly, we consider the letter without probative value in establishing any liability of Sika for breach of an implied warranty in supplying the coating originally used by Guaranteed. The trial judge also properly excluded this letter.

■ Americana complains in the third through the sixth enumeration of the refusal to give certain requested instructions, as to which the trial judge conducted a hearing and disclosed his "proposed action" to reject the requests, as required under Section 17 (b) of the Appellate Practice Act of 1965, as amended, but there is nothing to show a proper objection to the failure to give instructions *after the court instructed the jury and before the jury returned a verdict,* so as to meet the requirements of Section 17 (a) of the Act as to asserted error not within the exception under Section 17 (c) of the Act. See Ga. L. 1965, pp. 18, 31; 1966, pp. 493, 498; *Code Ann.* § 70-207; *Southwire Co. v. Franklin Aluminum Co.,* 114 Ga. App. 337, 338 (2) (151 SE2d 493); *Nathan v. Duncan,* 113 Ga. App. 630, 638. (149 SE2d 383). Nothing appears to bring the enumerations within the scope of Section 17 (c) of the Act, which eliminates the necessity of an objection to instructions which show substantial error as a matter of law, explained in a recent holding of this court as "blatantly apparent and prejudicial to the extent that it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it." *Hollywood Baptist Church v. State Hwy. Dept.,* 114 Ga. App. 98, 100 (150 SE2d 271). Accordingly, these enumerations require no further consideration.

■ In the seventh enumeration Americana complains of the refusal of the court to allow it to call a witness, a former employee of Sika, for the purposes of cross examination, thus restricting Americana to direct examination of this witness. The witness was district sales manager of the Southeastern District for Sika from January of 1958 until May of 1964, and had represented Sika in the transaction here involved, including efforts to assist Guaranteed in eliminating the defective condition of the original application of Sika Surface Kote. *Code Ann.* § 38-1801 allows a party to call for cross examination "the opposite party, or any one for whose immediate benefit such suit is prosecuted or defended, or any agent of said party, or agent of any person for whose immediate benefit such suit is prosecuted or defended, or officer or agent of a corporation when a corporation is such party, or for whose benefit such

suit is prosecuted." In *Atlanta Joint Terminals v. Knight,* 98 Ga. App. 482, 485 (106 SE2d 417), this court, in upholding the ruling of the lower court allowing the plaintiff to call employees of the defendant for cross examination, pointed out that "[a]ll of the witnesses involved were, at the time of the occurrence complained of and *at the time of the trial, employees* of the defendant or of one of the corporate partners of the defendant, and, as such, were subject to all of the pressures and possible prejudices in favor of the defendant which that relationship would tend to engender." No Georgia case has come to our attention where it was held to be error to refuse to allow a party to call for cross examination a former employee, even though while employed he may have been an agent of the opposite party within the sense of the term as used in *Code Ann.* § 38-1801, supra, although it may be error, as an abuse of discretion, to allow a party to call an employee of the other party for cross examination on irrelevant matters, irrespective of whether his actions were within or outside his authority as an agent. See *State Hwy. Dept. v. Ball,* 112 Ga. App. 480, 484 (145 SE2d 577). The decisions under similar statutes or rules in other jurisdictions vary. See the annotation, 56 ALR2d 1108; 58 AmJur 313, Witnesses, § 560; 98 CJS 112, 113, Witnesses, § 367. We think the real purpose of the Georgia statute, as suggested in the *Atlanta Joint Terminals* case, supra, is that of allowing a party to call for cross examination those persons who by reason of a relationship within the terms of the statute existing at the time of the examination are subject to "all of the pressures and possible prejudices . . . which that relationship would tend to engender," and that where such relationship is no longer in existence it is not error, in the absence of any basis other than a former relationship, to refuse to allow the party calling the witness to treat such person as an adverse witness. In this connection, see Snelling State Bank v. Clasen, 132 Minn. 404 (157 NW 643), involving the same result under a similar statute. Furthermore, we find nothing to disclose that the testimony of the witness would have varied had he been subjected to cross examination by the complaining party, and we think that, whatever the ruling by the lower court, it

is incumbent on the complaining party on appeal to show something more than the presumed possibility of prejudice where the issue is that of refusing or allowing cross examination.

■ The eighth and ninth enumerations are directed to the instructions of the court defining "use intended" in reference to an implied warranty. The case arose before the effective date of the Uniform Commercial Code and the court instructed the jury, after quoting former *Code Ann.* § 96-307 through Subdivision 1, as follows:

"I charge you that this section requires the manufacturer to warrant that the article manufactured and sold is reasonably fit for the purpose anticipated for the article, or materials, or goods; and that the warranty extends from the manufacturer to the ultimate consumer.

"Now, in connection with that code section and in connection with that charge that I have just given you, I also charge you that the warranty implied by law, that an article or articles sold are reasonably suited to the use intended, refers not to any particular intended use by the purchaser, even if such intended use is made known to the seller, but to any use for which the article or articles sold are commonly intended. There is no implied warranty that the thing sold will be suited to the purposes of the buyer.

"I likewise charge you that to recover damages on account of the alleged breach of an implied warranty of merchantability and suitability to the use intended of the Sika Surface Kote alleged to have been manufactured by the defendant, the use intended means not the particular use intended by the purchaser, even though known to the seller, but means only such uses as the article may have been manufactured for by the Sika Chemical Corporation."

Unlike the situation ruled upon in Division 3 of this opinion, counsel for the plaintiff did note a renewal of objections after the court had instructed the jury with respect to the defendant's requested instructions, Nos. 2 and 3, which are in substance the content of the second and third paragraphs of the foregoing excerpt, and when viewed with the objections previously made, we consider the action sufficient to preserve as an issue the definition of "use intended" in reference to an implied warranty.

The term appears in the same context in former *Code* § 96-301 (2) and former *Code Ann.* § 96-307 (1), the first stating an implied warranty in respect to a purchaser, and the second expressly extending an implied warranty from the manufacturer to the ultimate consumer, that "[t]he article sold is merchantable and reasonably suited to the use intended." The second paragraph of the excerpt is in language adapted from the second headnote of *Love v. Nixon,* 82 Ga. App. 445 (61 SE2d 423), defining the meaning in reference to former *Code* § 96-301, and the third paragraph is from language appearing in *Mons v. Republic Steel Corp.,* 113 Ga. App. 135 (147 SE2d 473), relying upon the *Love* case as controlling the meaning under former *Code Ann.* § 96-307 (1). The instructions as given were properly adjusted to the pleadings and the evidence. These enumerations are without merit.

■ The remaining enumerations are without merit. The court did not err in directing a verdict for Sika on the first count in the absence of any proof of an express warranty; the jury was authorized under the evidence to find for Sika on the second count with respect to the breach of an implied warranty; no basis appears for any reason assigned for holding that the judgment is contrary to law, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Pannell and Deen, JJ., concur.*